WYATT VESPERMANN
California State Bar No. 322865
**PANISH | SHEA | RAVIPUDI LLP**
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone: 310.477.1700
Facsimile: 310.477.1699
wvespermann@panish.law

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HANNAH GONZALEZ-SALTOS, a deceased minor, by and through her successor in interest, MARIA SALTOS; MIA GONZALEZ-SALTOS, a deceased minor, by and through her successor in interest, MARIA SALTOS; MARIA SALTOS, an individual; ANDY GONZALEZ-SALTOS, a minor by and through his Guardian Ad Litem, MARIA SALTOS,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>ASPIRANET, a nonprofit corporation; COUNTY OF TULARE, a public entity; CECILIA RODRIGUEZ, an individual; LUKE HAMILTON, an individual; MICHAEL YOAKUM, an individual; JUDITH YOAKUM, an individual; ALBERTO GONZALEZ RIOS, an individual; and DOES 1 through 30;<br><br>                    Defendants. | Case No.  3:25-CV-06324<br><br>**COMPLAINT FOR DAMAGES**<br><br>**FIRST CLAIM FOR RELIEF**<br>    42 U.S.C. 1983 (Warrantless Seizure)<br><br>**SECOND CLAIM FOR RELIEF**<br>    **42 U.S.C. 1983 (Failure to Provide Dependent Minor Continued Safety, Security, Adequate Care and Supervision)**<br><br>**THIRD CLAIM FOR RELIEF**<br>    *Monell*-Related Claims<br><br>**FOURTH CLAIM FOR RELIEF**<br>    **Breach of Mandatory Duties**<br><br>**FIFTH CLAIM FOR RELIEF**<br>    Negligence/NIED<br><br>**[JURY TRIAL DEMANDED]** |

COME NOW Plaintiffs, by and through their undersigned attorneys, and hereby files the following Complaint for Damages and Jury Demand, alleging and complaining as follows:

## JURISDICTION AND VENUE

1. This Court has original Federal Question Jurisdiction pursuant to 28 U.S.C.§§1331 and 1343, over Plaintiff's claims for Violation of Civil Rights 42 U.S.C.§1983.

2. This action is brought, at least in part, pursuant to 42 U.S.C. §1983 to seek redress for Defendants' actions and/or omissions taken under color of law which violated Plaintiffs' rights arising under the 1st, 4th, and 14th Amendments to the United States Constitution.

3. Venue in this District is proper under 28 U.S.C. § 1391 as Defendant ASPIRANET resides in this judicial district, and it is believed that all living parties and public/private entity parties currently reside in or are largely situated in the State in which this district is located.

4. This action also arises under California *Code of Civil Procedure* §377.60 and §377.30 for the wrongful deaths of HANNAH GONZALEZ-SALTOS and MIA GONZALEZ-SALTOS while in TULARE COUNTY's care, custody and control. These minors died at the ages of thirteen and fifteen, respectively, and left no issue or surviving spouses.

5. These allegations are based on Plaintiffs' personal knowledge, investigation by Plaintiffs' Counsel, and on information and belief.

## PARTIES TO THIS ACTION

6. At all times relevant herein, Plaintiff MARIA SALTOS was and is an individual living, and residing, in the State of California. Plaintiff MARIA SALTOS, along with Defendant ALBERTO GONZALEZ RIOS, is the natural parent of Decedents HANNAH GONZALEZ-SALTOS and MIA GONZALEZ-SALTOS whose parental rights were never terminated and thus has standing under C.C.P.§ 377.60(a) to bring this action.

7.     At all times relevant herein, Plaintiff ANDY GONZALEZ-SALTOS, a minor, was and is an individual living, and residing, in the State of California.

8.     At all times relevant herein, Decedent HANNAH GONZALEZ-SALTOS was residing in the State of California. Decedent HANNAH GONZALEZ-SALTOS passed away on July 8, 2024.

9.     At all times relevant herein, Decedent MIA GONZALEZ-SALTOS was residing in the State of California. Decedent MIA GONZALEZ-SALTOS passed away on July 3, 2024.

10.     At all times relevant herein, Defendant ALBERTO GONZALEZ RIOS was, and is believed to still be, residing in the State of California. Along with Plaintiff MARIA SALTOS, Defendant ALBERTO GONZALEZ RIOS is alleged to be an intestate heir of Decedent HANNAH GONZALEZ-SALTOS and Decedent MIA GONZALEZ-SALTOS, and is for this reason believed to be a necessary party to this action and is included as a nominal defendant. Plaintiffs seek no affirmative relief from Defendant ALBERTO GONZALEZ RIOS.

11.     Defendant ASPIRANET is a non-profit corporation and is an organization licensed by the State of California as a foster family agency. ASPIRANET is also an agent of and public actor with TULARE COUNTY. Plaintiff alleges on information and belief that ASPIRANET conceived, developed, established, instituted and maintained a foster-care program for the placement of foster children for and on behalf of COUNTY OF TULARE utilizing foster parents it certified at all relevant times, specifically Defendants MICHAEL YOAKUM and JUDITH YOAKUM. At all relevant times, Plaintiffs further allege that Defendant ASPIRANET, was acting in concert, assisting and at the direction with Defendant TULARE COUNTY and/or their employees/agents, at their behest, under contract and in exchange for money in the provision of traditional and exclusive government services for the benefit of Decedent HANNAH GONZALEZ-SALTOS, Decedent MIA GONZALEZ-SALTOS, and Plaintiff ANDY GONZALEZ-SALTOS.

12.     At all times relevant herein, Defendant COUNTY OF TULARE is a public entity duly organized and existing under the laws of the State of California. COUNTY OF TULARE operates under its authority its Child Welfare Services division ("CWS"). COUNTY OF TULARE also maintains a subdivision called the Tulare County Sheriff's Department ("SHERIFF"), which is responsible for discharging the COUNTY OF TULARE's law enforcement obligations to residents within the territorial jurisdiction of the COUNTY OF TULARE. COUNTY OF TULARE, CWS, and the SHERIFF shall be collectively and interchangeably referred to herein as "TULARE COUNTY." At all times mentioned herein Decedent HANNAH GONZALEZ-SALTOS, Decedent MIA GONZALEZ-SALTOS, and Plaintiff ANDY GONZALEZ-SALTOS were minors and foster children under the temporary custody of Defendant TULARE COUNTY.

13.     Defendant Social Worker CECILIA RODRIGUEZ was an individual residing in the State of California, and at all times mentioned herein was acting as an officer, agent, and/or employee of TULARE COUNTY, which Plaintiffs alleges on information and belief was authorized to make placement decisions for Decedent HANNAH GONZALEZ-SALTOS, Decedent MIA GONZALEZ-SALTOS, and Plaintiff ANDY GONZALEZ-SALTOS. At all relevant times alleged herein Defendant CECILIA RODRIGUEZ was acting within the course and scope of her duties and was acting under color of law on behalf of TULARE COUNTY. Defendant CECILIA RODRIGUEZ is sued here in her official capacity.

14.     Defendant Sheriff LUKE HAMILTON was an individual residing in the State of California, and at all times mentioned herein was acting as an officer, agent, and/or employee of TULARE COUNTY, which Plaintiffs alleges on information and belief physically participated in the seizure of Decedents HANNAH GONZALEZ-SALTOS and MIA GONZALEZ-SALTOS and their placement away from their mother Plaintiff MARIA SALTOS. At all relevant times alleged

herein Defendant LUKE HAMILTON was acting within the course and scope of his duties and was acting under color of law on behalf of TULARE COUNTY. Defendant LUKE HAMILTON is sued here in his official capacity.

15.    At all relevant times alleged herein, Defendants MICHAEL YOAKUM and JUDITH YOAKUM ("the YOAKUMs") were the foster parents of Decedent HANNAH GONZALEZ-SALTOS, Decedent MIA GONZALEZ-SALTOS, and Plaintiff ANDY GONZALEZ-SALTOS.

16.    Plaintiffs do not presently know the true names and capacities of defendants DOES 1 through 30, inclusive, and therefore sues them by these fictitious names. Plaintiffs are informed and believe that DOES 1 through 30, and each of them, were responsible in some manner for the acts or omissions alleged herein or were responsible for implementing, promulgating, maintaining, sanctioning, condoning, and/or ratifying policies, procedures, practice, and/or customs, under which the other defendants committed the illegal or wrongful acts as alleged herein. Plaintiffs will seek leave to amend this Complaint to add their true names and capacities when they have been ascertained.

17.    Plaintiff is informed and believes and thereupon alleges that each of the defendants named herein was acting under color of state law, in the course and scope of employment, or under a contract to act under state law with TULARE COUNTY.

18.    In doing the acts or omissions complained of, defendants were the agents and employees of the remaining defendants, and in doing the things alleged, were acting within the course and scope of said agency and employment. In addition, plaintiff alleges all defendants and DOES acted in concert with and/or conspired with other defendants named herein.

19.    Whenever this Complaint references any act of the Defendants, such allegations shall be deemed to mean all named Defendants, or their officers, agents, managers, representatives,

employees, heirs, assignees, customers, tenants, who did or authorized such acts while actively engaged in the operation, management, direction or control of the affairs of Defendants and while acting within the course and scope of their duties, except as specifically alleged to the contrary.

20.     At all times herein mentioned and with respect to the specific matters alleged in this Complaint, each Defendant, was a parent, subsidiary, affiliate, alter ego, partner, agent, franchisee, licensee, employee, employer, controlling franchiser, controlling licensor, principal, agent and/or joint venturer of each of the remaining Defendants, and was at all times acting within the course and scope of such agency, service, employment, control and/or joint venture, and each defendant has ratified, approved, conspired in, profited from and/or authorized the acts of each of the remaining Defendants and/or failed to prevent such acts when having the power and/or duty to do so, with full knowledge of said acts.

21.     Each of the above Defendants is responsible in some manner for the injuries suffered by Plaintiffs, whether it be by the particular Defendant's act or omission. Plaintiffs reserve their right to amend this complaint to set forth the specific facts and circumstances giving rise to such liability/responsibility at such time as additional records are produced and/or further information becomes available.

## COMPLIANCE WITH TORT CLAIMS STATUTE

22.     Decedent MIA GONZALEZ-SALTOS died on July 3, 2024 after Defendants left her at the foster family home of the YOAKUMs. At all times relevant, up to the very moment of her death, MIA GONZALEZ-SALTOS was a ward of TULARE COUNTY. Thus, with respect to any and all survival claims for arising from the death of MIA GONZALEZ-SALTOS, her successors in

interest (including Plaintiff MARIA SALTOS) had two years from the date of her death. And, Plaintiff MARIA SALTOS did so on July 28, 2025 – well within the limitations period.

23.     With respect to Decedent MIA GONZALEZ-SALTOS' survival claims arising under state law, California Government Code §§ 911.4(c)(2)-(3) provides the applicable framework. Under these code sections, the time for MIA GONZALEZ-SALTOS to serve her Notice of Tort Claim was tolled until her death because she was a minor dependent of TULARE COUNTY. Thus, on its face, the Notice of Tort Claim served on the TULARE COUNTY on December 23, 2024, was timely in that it was served within six months of her death.

24.     With respect to Plaintiff MARIA SALTOS' wrongful death claims, Plaintiff MARIA SALTOS timely served her Notice of Tort Claim on December 23, 2024, within the six months following MIA GONZALEZ-SALTOS' death.

25.     On January 28, 2025, Defendant TULARE COUNTY served its Notice of Rejection of Claim to the Notice of Tort Claim served by Plaintiff MARIA SALTOS on December 23, 2024 regarding MIA GONZALEZ-SALTOS' death.

26.     With respect to both MIA GONZALEZ-SALTOS' survival claims and her mother Plaintiff MARIA SALTOS' wrongful death claims, under both state and federal law, the instant suit was timely filed –within all applicable limitations periods.

27.     Decedent HANNAH GONZALEZ-SALTOS died on July 8, 2024 after Defendants left her at the foster family home of the YOAKUMs. At all times relevant, up to the very moment of her death, HANNAH GONZALEZ-SALTOS was a ward of TULARE COUNTY. Thus, with respect to any and all survival claims for arising from the death of HANNAH GONZALEZ-SALTOS, her successors in interest (including Plaintiff MARIA SALTOS) had two years from the date of her death. And, Plaintiff MARIA SALTOS did so on July 28, 2025 – well within the limitations period.

28.     With respect to Decedent HANNAH GONZALEZ-SALTOS' survival claims arising under state law, California Government Code §§ 911.4(c)(2)-(3) provides the applicable framework. Under these code sections, the time for HANNAH GONZALEZ-SALTOS to serve her Notice of Tort Claim was tolled until her death because she was a minor dependent of TULARE COUNTY. Thus, on its face, the Notice of Tort Claim served on the TULARE COUNTY on December 23, 2024, was timely in that it was served within six months of her death.

29.     With respect to Plaintiff MARIA SALTOS' wrongful death claims, Plaintiff MARIA SALTOS timely served her Notice of Tort Claim on December 23, 2024, within the six months following HANNAH GONZALEZ-SALTOS' death.

30.     On January 28, 2025, Defendant TULARE COUNTY served its Notice of Rejection of Claim to the Notice of Tort Claim served by Plaintiff MARIA SALTOS on December 23, 2024 regarding HANNAH GONZALEZ-SALTOS' death.

31.     With respect to both HANNAH GONZALEZ-SALTOS' survival claims and her mother Plaintiff MARIA SALTOS' wrongful death claims, under both state and federal law, the instant suit was timely filed –within all applicable limitations periods.

32.     Plaintiff ANDY GONZALEZ-SALTOS was placed with Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS at the foster family home of the YOAKUMs, and was present at the time of Decedents MIA GONZALEZ-SALTOS' and HANNAH GONZALEZ-SALTOS' drownings on July 3, 2024. At all times relevant, up to the present, Plaintiff ANDY GONZALEZ-SALTOS was, and is, a ward of TULARE COUNTY.

33.     As such, all applicable statutes of limitations, if any, on claims by Plaintiff ANDY GONZALEZ-SALTOS were tolled because ANDY GONZALEZ-SALTOS was a dependent of the court and the entity having custody of ANDY GONZALEZ-SALTOS was the entity (TULARE

COUNTY) to which the claim must have been presented and TULARE COUNTY failed to make a report as required by law (Government Code § 911.4 (c)(2) *et seq*.).

34.     Regardless, on December 23, 2024, Plaintiff ANDY GONZALEZ-SALTOS, by and through his natural mother, MARIA SALTOS, timely served her Notice of Tort Claim on December 23, 2024, within the six months following MIA GONZALEZ-SALTOS' and HANNAH GONZALEZ-SALTOS' drownings on July 3, 2024.

35.     On January 28, 2025, Defendant TULARE COUNTY served its Notice of Rejection of Claim to the Notice of Tort Claim served by Plaintiff ANDY GONZALEZ-SALTOS, by and through his natural mother, MARIA SALTOS, on December 23, 2024 regarding MIA GONZALEZ-SALTOS' and HANNAH GONZALEZ-SALTOS' drownings on July 3, 2024.

36.     With respect to Plaintiff ANDY GONZALEZ-SALTOS' claims, under both state and federal law, the instant suit was timely filed – within all applicable limitations periods.

## ALLEGATIONS COMMON TO ALL CLAIMS

**– Foster children have the right to reasonably safe living conditions and services necessary to ensure protection from physical, psychological, and emotional harm**

37.     For all periods relevant to this Complaint, California has agreed to administer its foster-care program pursuant to the Child Welfare Act, related regulations, and policies promulgated by the Secretary of the United States Department of Health and Human Services. The Child Welfare Act provides that "the State shall develop and implement standards to ensure that children in foster care placements in public or private agencies are provided quality services that protect the safety and health of the children." 42 U.S.C. § 671(a)(22).

38.     Foster children also have federal-law entitlements arising from the Child Welfare Act, 42 U.S.C. §§ 670 *et seq*., and the Child Abuse Prevention and Treatment and Adoption Reform Act

("CAPTA"), 42 U.S.C. §§ 5101 *et seq*. These entitlements are property interests under the Due Process Clauses. Foster children are unconstitutionally deprived of these property interests when they are not provided with mandated supervision, protection, and care.

39.    Children removed from their home by a county social worker and placed in foster care or emergency shelter care with a foster home, referred to collectively herein as foster care, enjoy Due Process and Association rights under the Fourteenth and First Amendments of the United States Constitution, and the California Constitution.

40.    Foster children have, at the very least, a fundamental liberty interest in their own safety, health, and well-being, as well as intimate- and expressive-association interests. The duty to supervise and protect foster-children from harm by a foster parent is the quintessential responsibility of the social workers assigned to this helpless and vulnerable population.

**– The risk of foster children drowning in foster placements with pools is well-established and well-known**

41.    Welfare and Institutions Code section 10850.4(j) requires all county welfare agencies and departments to notify the California Department of Social Services ("CDSS") of all child fatalities that occurred within its jurisdiction. CDSS compiles these statistics and periodically publishes and disseminates them in its Child Fatality and Near Fatality Annual Report.

42.    Amongst the leading causes of child fatalities across time have been pool drownings. *See* https://cdss.ca.gov/inforesources/child-fatality-and-near-fatality/child-fatality-and-near-fatality-annual-reports, last accessed 7/28/2025.

43.    Consequently, CDSS has enacted Title 22, Division 6, Chapter 8.8 of the California Code of Regulations, entitled *General Licensing Requirements*, along with Chapter 9.5, entitled *Foster Family Homes* which set forth specific requirements regarding the safety and security of foster homes equipped with swimming pools.

44.     Similarly, CDSS has enacted the *Resource Family Approval Written Directives* Version 8, effective November 1, 2022 and during the relevant time period. These directives were enacted under Title IV-E, Section 471(a)(10) of the Social Security Act and under Welfare and Institutions Code section 16519.5, and mirror the requirements regarding the safety and security of foster homes equipped with swimming pools set forth throughout Title 22, Division 6 of the California Code of Regulations.

45.     Regulation section 89387(h) and Resource Family Approval Written Directives section 11-02(e) both provide the same clear mandate: an adult who has the ability to swim shall provide supervision at all times when a foster child is using a pool.[1-2]

46.     The reasoning behind these enactments is obvious—swimming pools are inherently dangerous to all children, and are especially dangerous to foster children where the caregiver may have limited understanding of the foster child's ability to swim. The required safeguard against this danger is ensuring that an adult with the ability to swim and effect rescue supervises the children at all times.

**– Hannah, Mia, and Andy are unlawfully seized from Maria Saltos' care**

47.     On April 19, 2024, TULARE COUNTY received a child endangerment referral due to concerns that Plaintiff MARIA SALTOS and Defendant ALBERTO GONZALEZ RIOS were not meeting the hygiene needs to their then 11-year-old son, as well as a report from HANNAH

---

[1] Regulation section 89387(h) provides: "An adult who has the ability to swim shall provide supervision at all times when 'a child' is using a pool or a body of water from which rescue requires the rescuer's ability to swim."

[2] Resource Family Approval Written Directives section 11-02(e) provides: "A Resource Family shall ensure that an adult who is able to swim provides continual supervision when a child or individual specified in subsection (b) is using or near a pool or other body of water required to be made inaccessible, as specified in subsection (d)."

GONZALEZ-SALTOS that she has observed Defendant ALBERTO GONZALEZ RIOS spit on Plaintiff MARIA SALTOS, such that the children are at risk of emotional abuse.

48.    TULARE COUNTY social worker Crystal Martinez responded to the referral and went to Plaintiff MARIA SALTOS' home. There, Social Worker Martinez observed the electricity and water of the home was off. She required Plaintiff MARIA SALTOS and Defendant ALBERTO GONZALEZ RIOS to demonstrate that power and water was running before she would leave the premises. Plaintiff MARIA SALTOS and Defendant ALBERTO GONZALEZ RIOS complied and that same day power and water were restored.

49.    On April 23, 2024, Social Worker Martinez returned to the premises and observed that both power and water were still running. Social Worker Martinez observed the home to be clean. At this time, Plaintiff MARIA SALTOS disclosed that she needed support for the children's behaviors and Plaintiff MARIA SALTOS agreed to enter into a Family Maintenance plan with TULARE COUNTY for the benefit of her children.

50.    On April 30, 2024, Social Worker Martinez conducted a home visit with Plaintiff MARIA SALTOS where she disclosed her intent to seek a divorce from Defendant ALBERTO GONZALEZ RIOS. Plaintiff MARIA SALTOS further disclosed that Defendant ALBERTO GONZALEZ RIOS is aggressive with her, at night forces her to have sexual intercourse, and has been physically abuse towards her.

51.    **At the end of their conversation on April 30, 2024, Social Worker Martinez explicitly instructed Plaintiff MARIA SALTOS to call law enforcement if any acts of domestic violence occur.**

52.     At this time, none of the children were detained from Plaintiff MARIA SALTOS by TULARE COUNTY, nor was there any indication that the condition of the home presented exigent circumstances necessitating the immediate need to take any of the children into protective custody by TULARE COUNTY.

53.     Approximately two months later, on July 2, 2024, TULARE COUNTY Sheriff's Office receives a call where it was reported that Defendant ALBERTO GONZALEZ RIOS was grabbing Plaintiff MARIA SALTOS by the throat, as well as kicking and throwing things at her. Plaintiff MARIA SALTOS had instructed Plaintiff ANDY GONZALEZ-SALTOS to call 911. When Defendant ALBERTO GONZALEZ RIOS learned that law enforcement was in route, he fled and was later arrested.

54.     When officers with the TULARE COUNTY Sheriff's Office arrived at the home on July 2, 2024, they confirmed that Defendant ALBERTO GONZALEZ RIOS was no longer present in the home and conducted a home inspection. The sheriffs observed the same home condition that Social Worker Martinez had already observed two months prior. The sheriffs notified CWS, who responded to the home while the sheriffs were still present.

55.     Defendant Social Worker CECILIA RODRIGUEZ responded to the home and did a walk through of the premises with the SHERIFF, including Defendant Sheriff LUKE HAMILTON. Defendant Social Worker CECILIA RODRIGUEZ and Defendant Sheriff LUKE HAMILTON observed the same home condition that Social Worker Martinez had already observed two months prior—and had deemed insufficient to detain.

56.     Nonetheless, Defendant Social Worker CECILIA RODRIGUEZ and Defendant Sheriff LUKE HAMILTON, working in concert with one another, decided to take all of Plaintiff MARIA SALTOS' thirteen children from her, including Decedent HANNAH GONZALEZ-SALTOS,

Decedent MIA GONZALEZ-SALTOS, and Plaintiff ANDY GONZALEZ-SALTOS, and put them into protective custody.

57.    Defendant Social Worker CECILIA RODRIGUEZ and Defendant Sheriff LUKE HAMILTON made this decision despite there being no exigent circumstances and, on information and belief, without a warrant from a judicial officer.

58.    When Defendant Social Worker CECILIA RODRIGUEZ and Defendant Sheriff LUKE HAMILTON seized Plaintiff MARIA SALTOS' thirteen children from her, including Decedent HANNAH GONZALEZ-SALTOS, Decedent MIA GONZALEZ-SALTOS, and Plaintiff ANDY GONZALEZ-SALTOS, there was an absence of exigent circumstances, *i.e.*, none of the children were in danger of suffering severe bodily injury or death within the time it would take to obtain a warrant. Worse still, Plaintiff MARIA SALTOS was already under a Family Maintenance plan with TULARE COUNTY, such that there were lesser intrusive methods to protect the children from harm—if it were true, which it was not—that did not require Plaintiff MARIA SALTOS losing physical custody of her children, such as continuation of the Family Maintenance plan with ongoing court supervision to ensure compliance.

59.    At no time that evening, not once, did Defendant Social Worker CECILIA RODRIGUEZ and Defendant Sheriff LUKE HAMILTON inquire about some lesser intrusive way to protect Plaintiff MARIA SALTOS' children from the perceived risk of harm, whether real or imagined. Instead, it had been decided that if Plaintiff MARIA SALTOS did not agree to hand over her children (she had refused) then they would simply be taken without cause.

60.    Defendant Social Worker CECILIA RODRIGUEZ and Defendant Sheriff LUKE HAMILTON knew of the need to obtain a warrant in order to lawfully separate the children from Plaintiff MARIA SALTOS when there was an absence of an imminent risk of serious bodily injury,

yet willfully failed to do so because each of them knew that insufficient evidence supported such a request.

61.     Alternatively, Plaintiffs allege that Defendant Social Worker CECILIA RODRIGUEZ and Defendant Sheriff LUKE HAMILTON knew nothing about what was necessary in the facts and circumstances of a child abuse referral investigation to remove a child lawfully without a warrant, due to the non-existent and/or inadequate training provided to them as social workers by TULARE COUNTY, and that failure in training, among other deficiencies in policies and practices of TULARE COUNTY, were the moving force behind the unlawful removal of the children from their mother.

62.     In addition, Defendant Social Worker CECILIA RODRIGUEZ failed to conduct a reasonable investigation into the facts prior to making the decision to seize and seizing the children. For example, they did not even bother checking their own records that showed that there already existed a Family Maintenance plan with ongoing court supervision to ensure safe maintenance of the children in the home. Had they bothered to check, Defendant Social Worker CECILIA RODRIGUEZ would have learned that Social Worker Martinez was already aware of the home condition and had already determined that it did not rise to the level to detain the children.

63.     Any reasonable government official would know that insufficient evidence existed to support a finding of exigent circumstances such that an exception to the warrant requirement applied, and that far less intrusive options existed.

64.     After seizing the children, Defendant Social Worker CECILIA RODRIGUEZ did not know a thing about these children, including whether they knew how to swim or not. This ignorance proved to be fatal for HANNAH GONZALEZ-SALTOS and MIA GONZALEZ-SALTOS.

65.    The last time Plaintiff MARIA SALTOS saw her oldest daughters alive was as HANNAH GONZALEZ-SALTOS and MIA GONZALEZ-SALTOS were being put into a car by Defendant Social Worker CECILIA RODRIGUEZ and Defendant Sheriff LUKE HAMILTON.

– **Hannah and Mia drown in each other's arms**

66.    On July 2, 2024, after taking Plaintiff MARIA SALTOS' thirteen children into protective custody without a plan, Defendant Social Worker CECILIA RODRIGUEZ and other TULARE COUNTY social workers scrambled to find foster placements.

67.    That day, four of the children, including ANDY GONZALEZ-SALTOS, HANNAH GONZALEZ-SALTOS, and MIA GONZALEZ-SALTOS, were placed in the foster family home of Defendants MICHAEL YOAKUM and JUDITH YOAKUM, which was certified for foster placements by the foster family agency, Defendant ASPIRANET. Also living in the three-bedroom foster home were another foster child and the YOAKUMs' adopted autistic son.

68.    ANDY    GONZALEZ-SALTOS,    HANNAH    GONZALEZ-SALTOS,    and    MIA GONZALEZ-SALTOS speak Spanish and the YOAKUMs speak English. As such, the ability to communicate with each other was extremely limited.

69.    Public records show that Defendants MICHAEL YOAKUM and JUDITH YOAKUM are both well-over the age of 70-years-old.

70.    Installed at the YOAKUMs' home is a large inground pool:



71.     Defendants TULARE COUNTY and ASPIRANET certified the YOAKUMs' home for foster placements, and more specifically the placement of ANDY GONZALEZ-SALTOS, HANNAH GONZALEZ-SALTOS, and MIA GONZALEZ-SALTOS, despite the following:

- They knew nothing about these minors, and failed to ask about or otherwise verify their ability to swim;

- None of these minors knew how to swim, such that a pool was an obvious drowning hazard to them if left unsupervised or with inadequate supervision;

- None of these children knew how to speak English such that their ability to communicate with the YOAKUMs was extremely limited;

- Both MICHAEL YOAKUM and JUDITH YOAKUM are elderly and were physically incapable of effecting rescue should a drowning event occur; and

- Neither MICHAEL YOAKUM nor JUDITH YOAKUM were adequately trained on their obligation to ensure continuous supervision of the minors while they are swimming.

72.     In the afternoon of July 3, 2024, the high temperature in Fresno, California where the YOAKUMs resided reached 110°F. This tied the record high for that date, previously set in 1889.

73.     In the afternoon, MICHAEL YOAKUM left with a foster child for an appointment. ANDY GONZALEZ-SALTOS, HANNAH GONZALEZ-SALTOS, and MIA GONZALEZ-SALTOS were told to go swimming in the pool at this time. JUDITH YOAKUM was reportedly in and out of the home and watching them from the kitchen window, while also attending to their autistic son and the other foster child.

74.     At this time, MIA GONZALEZ-SALTOS was on a floating lounge chair that drifted to the deep end of the pool. HANNAH GONZALEZ-SALTOS was using the edges of the pool to move along the outer rim of the pool and also ended up in the deep end of the pool. MIA GONZALEZ-SALTOS suddenly fell from the floating lounge chair and grabbed at HANNAH GONZALEZ-SALTOS in a panic, pulling HANNAH GONZALEZ-SALTOS off the edge of the pool.

75.     MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS both sank to the bottom of the pool in each other's arms.

76.     Plaintiff ANDY GONZALEZ-SALTOS initially thought they would resurface. When they didn't, he ran inside to get help. Defendant JUDITH YOAKUM then jumped in the pool and attempted to reach the girls but was unsuccessful as it was too deep for her to reach the bottom.

77.     JUDITH YOAKUM then is described as running into the streets yelling for help. A neighbor heard the yells and also jumped into the pool but likewise, the pool was too deep, and he was unable to reach the bottom.

78.     An unidentified individual, potentially the YOAKUMs' granddaughter, was finally able to reach the girls at the bottom of the pool and pulled them to the shallow end and eventually out of the pool. However, by this time, it was too late.

79.      Resuscitation attempts were performed on both girls, but MIA GONZALEZ-SALTOS was pronounced dead at the hospital later that evening.

80.     HANNAH GONZALEZ-SALTOS survived for a time. However, on July 8, 2024, with her mother Plaintiff MARIA SALTOS at her side, HANNAH GONZALEZ-SALTOS was taken off of life support and died.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. 1983 – Warrantless Seizure**
(By Plaintiff Maria Saltos against
Defendants Rodriguez, Hamilton, County of Tulare, and DOEs 1-10)

81.     Plaintiff MARIA SALTOS hereby incorporate by reference all other paragraphs of this Complaint as if set forth in full.

82.     The right to familial association guaranteed under, without limitation, the Fourth and Fourteenth Amendments is "clearly established" such that a reasonable social worker and/or law

enforcement agent in Defendants' situation would know it is unlawful to remove a child from the care, custody, and control of its parents or to question, examine, or search a child in the absence of exigent circumstances without first obtaining a warrant to do so.

83.     Moreover, the right to familial association guaranteed under the First and Fourteenth Amendments to the United States Constitution was so clearly established that any reasonable social worker and/or law enforcement agent, including each of the Defendants, would know that it is unlawful to continue to detain a child from the custody of their parent when that agent knows, or has reason to know, that there is no legal or factual basis for the continued detention.

84.     Defendants, and each of them, had, at all times relevant herein, an affirmative duty and obligation to recognize and conduct themselves in a manner that confirms, provides for, and does not violate the protections guaranteed Plaintiff Maria Saltos under the United States Constitution, including those under the Fourteenth Amendment, to include without limitation, the protection of parental rights, the right to privacy, family integrity and the right to familial relations.

85.     On July 2, 2025, Defendants, and each of them, were acting under color of state law when they acted to violate Plaintiff MARIA SALTOS' civil rights by, but not limited to, seizing, removing, and detaining thirteen children, including MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS, from the care, custody and control of their mother, without judicial authorization, parental consent, and in the absence of exigent circumstances.

86.     Said Defendants committed these unconstitutional acts without proper justification or authority, without probable cause, and without any specific evidence to suggest that the children were in imminent danger of serious bodily injury or death at the hands of their mother.

87.     At the time of said detention, Defendants, and each of them, knew that Plaintiff MARIA SALTOS was the mother of these children and therefore entitled to companionship, care, custody, and management of her children free of unwarranted government interference.

88.     Defendants, and each of them, failed to conduct a reasonable investigation into the facts prior to detaining these children.

89.     Defendants thereby violated Plaintiff Maria Saltos' rights under the Fourteenth Amendment of the United States Constitution.

90.     Each of said Defendants collaborated, acted, and conspired to violate Plaintiff's civil rights as alleged herein.

91.     Defendants purposefully failed to seek and/or obtain a warrant, knowing that insufficient grounds or evidence existed to support such application and/or, as detailed in Plaintiffs' Third Claim for Relief, below, as a result of an unconstitutional policy, custom, or practice of never obtaining warrants prior to seizing children.

92.     As a direct and proximate result of each Defendant's acts and/or affirmative decisions not to act as set forth above, Plaintiff MARIA SALTOS sustained the following injuries and damages, past and future, including, but not limited to:

A.  Wrongful death of MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS;

B.  Loss of economic support, including lost wages and earning capacity, by MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS;

C.  Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support;

D.  Emotional distress from the violations of her personal Constitutional rights, including grief, sorrow, anxiety, worry, anger, humiliation, and indignity;

E.  Loss of enjoyment of life;

F.    All other legally cognizable special and general damages;

G.    Violations of state and federal constitutional rights; and

H.    All damages, punitive damages, and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, 29 U.S.C. § 793, California Civil Code §§ 52 and 52.1, Cal. Code of Civil Procedure 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

93.    As a direct and proximate result of each Defendant's acts as set forth above, Plaintiff MARIA SALTOS, as Successor in Interest for Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS, sustained the following injuries and damages, past and future, including, but not limited to:

A.    Hospital and medical expenses incurred by MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS;

B.    Coroner's fees, funeral, and burial expenses;

C.    MIA GONZALEZ-SALTOS' and HANNAH GONZALEZ-SALTOS' loss of life, pursuant to federal civil rights law;

D.    MIA GONZALEZ-SALTOS' and HANNAH GONZALEZ-SALTOS' conscious pain/suffering, pursuant to federal civil rights law; and

E.    All damages, punitive damages, and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, 29 U.S.C. § 793, California Civil Code §§ 52 and 52.1, Cal. Code of Civil Procedure 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

94.    In committing the acts alleged above, the individually named Defendants and DOES 1-10 acted maliciously, oppressively, and/or with reckless disregard for the rights and safety of Plaintiff MARIA SALTOS, Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS, and others, and by reason thereof, Plaintiff MARIA SALTOS is entitled to punitive damages and penalties allowable under 42 U.S.C. § 1983, California Code of Civil Procedure §§ 377.20 *et seq*., and other state and federal law against the individual Defendants. Plaintiff does not seek punitive damages against the COUNTY OF TULARE.

95.     Plaintiff is also entitled to reasonable costs and attorney's fees under 42 U.S.C. § 1988 and other applicable California codes and laws.

**SECOND CLAIM FOR RELIEF**
**Violation of Constitutional Rights, 42 U.S.C. § 1983**
**Failure to Provide Dependent Minor Continued Safety and Security,**
**Minimally-Adequate Care and Supervision, and Intimate and Familial Association**
(By Plaintiffs against
Defendants Aspiranet, County of Tulare, Cecilia Rodriguez, and DOEs 1-10)

**COUNT 1**
**Special Relationship Doctrine**
(Against Defendants Aspiranet, Cecilia Rodriguez, and DOEs 1-10, and each of them inclusive)

96.     Plaintiffs hereby incorporate by reference paragraphs 1–80, *supra*, as if set forth in full.

97.     At all relevant times alleged herein, Defendants ASPIRANET, CECILIA RODRIGUEZ, and DOES 1-10, and each of them, were acting within the course and scope of their duties and under color of law as employees and/or agents of Defendant COUNTY OF TULARE.

98.     At all relevant times, Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS and Plaintiff ANDY GONZALEZ-SALTOS were wards of the COUNTY OF TULARE detained in the COUNTY OF TULARE's care, custody, and control.

99.     By virtue of their status as wards of the COUNTY OF TULARE, Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS and Plaintiff ANDY GONZALEZ-SALTOS held protected liberty interests in being shielded from dangerous placement decisions affecting their safety and well-being and harm inflicted in foster care and enjoyed a special relationship with the COUNTY OF TULARE and each of their case workers and their respective supervisors.

100.    At all times applicable herein, said liberty interests and concomitant duties of Defendants, and each of them, was so clearly established that any reasonable caseworker or supervisor

similarly-situated would know it was a violation of Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS and Plaintiff ANDY GONZALEZ-SALTOS' fundamental rights to make dangerous placement decisions to their detriment and to fail to provide for their continued safety and security and to fail to provide them with at least minimally-adequate care and supervision, including reasonably adequate caretakers.

101.    As alleged in greater detail above, Defendants, and each of them inclusive, although at different times, failed to do the following with respect to Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS and Plaintiff ANDY GONZALEZ-SALTOS among other things:

- Learn basic safety information about these minors, and ask about or otherwise verify their ability to swim;

- Determine if these minors knew how to swim or not, so to know whether a swimming pool at the foster placement would constitute an obvious drowning hazard to them if left unsupervised or with inadequate supervision;

- Ensure that these minors had a means to communicate with their foster parents, especially since none of these children knew how to speak English such that their ability to communicate with the YOAKUMs was extremely limited;

- Ensure that in certifying a foster placement with a swimming pool that the caregivers were physically capable of effecting rescue should a drowning event occur; and

- Ensure that in certifying a foster placement with a swimming pool that the caregivers are adequately trained on their obligation to ensure continuous supervision of the minors while they are swimming.

This list is not exhaustive and is intended to serve only as an example of the failures that lead to Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS drowning deaths.

102.    These Defendants, and each of them, consistently, and with knowledge of the deficient safety and supervision provided to Decedents MIA GONZALEZ-SALTOS and HANNAH

GONZALEZ-SALTOS and Plaintiff ANDY GONZALEZ-SALTOS, maintained them in an inappropriate and inadequate placement with an obvious hazard to their well-being.

103.    Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS would not have drowned, and Plaintiff ANDY GONZALEZ-SALTOS would not have witnessed the same, if these Defendants, and each of them, had provided them with even minimally adequate protection, supervision, healthcare, safety, and security.

104.    During the time Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS and Plaintiff ANDY GONZALEZ-SALTOS remained in the care, custody, and control of these Defendants, each of them were deliberately indifferent to their obvious and known basic care and supervision needs. In spite of their legal obligation to meet and address those needs, these Defendants, and each of them, knowingly and with deliberation failed to do so in the mode and manner alleged hereinabove, all in reckless disregard of their obligations and these minors' rights. To wit: these Defendants, and each of them, acted with a reckless disregard for, and deliberate indifference to, Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS and Plaintiff ANDY GONZALEZ-SALTOS' rights and needs by failing to provide for and ensure their continued safety and security and by failing to provide them with at least minimally adequate care, healthcare, safety, and supervision.

105.    These Defendants' conduct was so closely related to the deprivation of the Plaintiffs' rights that they were the moving force that caused each of their claimed injuries.

106.    As a direct and proximate result of these Defendants' acts and omissions, Plaintiff ANDY GONZALEZ-SALTOS suffered injuries as alleged herein, including but not limited to injuries to their person, which injuries include pain, humiliation, anxiety, mental anguish, emotional distress, and other general and special damages in an amount to be ascertained according to proof at trial.

107.    As a direct and proximate result of each Defendant's acts and/or affirmative decisions not to act as set forth above, Plaintiff MARIA SALTOS sustained the following injuries and damages, past and future, including, but not limited to:

    A.  Wrongful death of MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS;

    B.  Loss of economic support, including lost wages and earning capacity, by MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS;

    C.  Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support;

    D.  Emotional distress from the violations of her personal Constitutional rights, including grief, sorrow, anxiety, worry, anger, humiliation, and indignity;

    E.  Loss of enjoyment of life;

    F.  All other legally cognizable special and general damages;

    G.  Violations of state and federal constitutional rights; and

    H.  All damages, punitive damages, and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, 29 U.S.C. § 793, California Civil Code §§ 52 and 52.1, Cal. Code of Civil Procedure 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

108.    As a direct and proximate result of each Defendant's acts as set forth above, Plaintiff MARIA SALTOS, as Successor in Interest for Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS, sustained the following injuries and damages, past and future, including, but not limited to:

    A.  Hospital and medical expenses incurred by MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS;

    B.  Coroner's fees, funeral, and burial expenses;

    C.  MIA GONZALEZ-SALTOS' and HANNAH GONZALEZ-SALTOS' loss of life, pursuant to federal civil rights law;

D.  MIA GONZALEZ-SALTOS' and HANNAH GONZALEZ-SALTOS' conscious pain/suffering, pursuant to federal civil rights law; and

E.  All damages, punitive damages, and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, 29 U.S.C. § 793, California Civil Code §§ 52 and 52.1, Cal. Code of Civil Procedure 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

109.   In committing the acts alleged above, the Defendants and DOES 1-10 acted maliciously, oppressively, and/or with reckless disregard for the rights and safety of Plaintiff MARIA SALTOS, Plaintiff ANDY GONZALEZ-SALTOS, Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS, and others, and by reason thereof, Plaintiffs MARIA SALTOS and ANDY GONZALEZ-SALTOS are entitled to punitive damages and penalties allowable under 42 U.S.C. § 1983, California Code of Civil Procedure §§ 377.20 *et seq*., and other state and federal law against the individual Defendants. Plaintiffs do not seek punitive damages against the COUNTY OF TULARE.

110.   Plaintiffs are also entitled to reasonable costs and attorney's fees under 42 U.S.C. § 1988 and other applicable California codes and laws.

## COUNT 2
## State Created Danger Doctrine
(Against Defendants Aspiranet, Cecilia Rodriguez, and DOEs 1-10, and each of them inclusive)

111.   Plaintiffs hereby incorporate by reference paragraphs 1–80, and 96–110, *supra*, as if set forth in full.

112.   In addition to the acts and omissions described above in Count 1, these Defendants are liable for Plaintiffs' injuries because their actions created and/or exposed Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS and Plaintiff ANDY GONZALEZ-SALTOS to dangers which they would not have otherwise faced but for Defendants' deliberate decisions and actions/inactions.

113.     These Defendants, and each of them, through their respective actions and/or inactions as described in detail above exhibited a knowing and deliberate indifference to Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS and Plaintiff ANDY GONZALEZ-SALTOS' supervision and protective needs.

114.     Specifically, Defendants, and each of them, knew of the danger that Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS and Plaintiff ANDY GONZALEZ-SALTOS faced, or would face, in the subject placement. In fact, well-known and well-establish drowning risk in foster homes with swimming pools, the risk that these minors would drowned if given access to the pool was so obvious that any reasonable official in Defendants' position would have known of the danger and taken immediate steps to ameliorate the danger.

115.     In spite of their knowledge of the dangers posed to Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS and Plaintiff ANDY GONZALEZ-SALTOS in the subject placement these Defendants, and each of them, acted and/or failed to act with deliberate indifference to these minors' safety by exposing them, or continuing to allow them to be exposed, to those dangers in spite of their knowledge of the danger and the obviousness/foreseeability of the potential harm they would suffer.

116.     But for the deliberate acts and omissions of these Defendants, and each of them, Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS and Plaintiff ANDY GONZALEZ-SALTOS would not otherwise have faced the dangers they endured, and would not have otherwise suffered the harms they suffered.

117.     Contrary to their obligations to them, these Defendants and each of them placed and maintained Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS and

Plaintiff ANDY GONZALEZ-SALTOS in situations where it was reasonably foreseeable that they would suffer serious injury and harm.

118.    These Defendants' conduct was so closely related to the deprivation of the Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS and Plaintiff ANDY GONZALEZ-SALTOS' rights that they were the moving force that caused each of their claimed injuries.

119.    As a direct and proximate result of these Defendants' acts and omissions, Plaintiff ANDY GONZALEZ-SALTOS suffered injuries as alleged herein, including but not limited to injuries to their person, which injuries include pain, humiliation, anxiety, mental anguish, emotional distress, and other general and special damages in an amount to be ascertained according to proof at trial.

120.    As a direct and proximate result of each Defendant's acts and/or affirmative decisions not to act as set forth above, Plaintiff MARIA SALTOS sustained the following injuries and damages, past and future, including, but not limited to:

A.  Wrongful death of MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS;

B.  Loss of economic support, including lost wages and earning capacity, by MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS;

C.  Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support;

D.  Emotional distress from the violations of her personal Constitutional rights, including grief, sorrow, anxiety, worry, anger, humiliation, and indignity;

E.  Loss of enjoyment of life;

F.  All other legally cognizable special and general damages;

G.  Violations of state and federal constitutional rights; and

H.  All damages, punitive damages, and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, 29 U.S.C. § 793, California Civil Code §§ 52 and 52.1, Cal. Code of Civil

Procedure 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

121.    As a direct and proximate result of each Defendant's acts as set forth above, Plaintiff MARIA SALTOS, as Successor in Interest for Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS, sustained the following injuries and damages, past and future, including, but not limited to:

  A.  Hospital and medical expenses incurred by MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS;

  B.  Coroner's fees, funeral, and burial expenses;

  C.  MIA GONZALEZ-SALTOS' and HANNAH GONZALEZ-SALTOS' loss of life, pursuant to federal civil rights law;

  D.  MIA GONZALEZ-SALTOS' and HANNAH GONZALEZ-SALTOS' conscious pain/suffering, pursuant to federal civil rights law; and

  E.  All damages, punitive damages, and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, 29 U.S.C. § 793, California Civil Code §§ 52 and 52.1, Cal. Code of Civil Procedure 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

122.    In committing the acts alleged above, the Defendants and DOES 1-10 acted maliciously, oppressively, and/or with reckless disregard for the rights and safety of Plaintiff MARIA SALTOS, Plaintiff ANDY GONZALEZ-SALTOS, Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS, and others, and by reason thereof, Plaintiffs MARIA SALTOS and ANDY GONZALEZ-SALTOS are entitled to punitive damages and penalties allowable under 42 U.S.C. § 1983, California Code of Civil Procedure §§ 377.20 *et seq.*, and other state and federal law against the individual Defendants. Plaintiffs do not seek punitive damages against the COUNTY OF TULARE.

123.    Plaintiffs are also entitled to reasonable costs and attorney's fees under 42 U.S.C. § 1988 and other applicable California codes and laws.

**COUNT 3**
**Intimate Association**

(Against Defendants Aspiranet, Cecilia Rodriguez, and DOEs 1-10, and each of them inclusive)

124.    Plaintiffs hereby incorporate by reference paragraphs 1–80, and 96–123, *supra*, as if set forth in full.

125.    In addition to the acts and omissions described above in Counts 1 and 2, these Defendants deprived Plaintiffs of their rights under the First and Fourteenth Amendments..

126.    Plaintiffs' right to associate with their daughters/sisters, Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS, is a fundamental right protected by the First and the Fourteenth Amendments. Family relationships involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of life.

127.    With respect to Plaintiff ANDY GONZALEZ-SALTOS, sibling relationships are intimate human relationships that are protected from unjustified interference by a State. In the foster-care context, it is well-established, as codified by the California Welfare & Institutions Code relating to foster children, and known by any reasonable person working with this population that maintaining sibling relationships, under the right circumstances, is imperative for the emotional well-being of the foster sibling child. This is particularly true for children who may never be returned to their parents; siblings may be the only true family they will ever have.

128.    Plaintiff ANDY GONZALEZ-SALTOS was one of the last people to see Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS alive. They were with him as he was just separated the day earlier from their mother by the State.

129.    Defendants were deliberately indifferent to Plaintiffs' right of association. An objective substantial risk of harm is exemplified by putting teenage girls who don't know how to swim in a foster placement where the caregivers are physically incapable of effecting rescue or even able

effectively communicate with them. Defendants were subjectively aware of these facts from which an inference could be drawn that a substantial risk of serious harm existed. Either they drew that inference or would have been compelled to draw that inference.

130.    These Defendants' misconduct deprived Plaintiffs' of their rights to intimate association under the First and Fourteenth Amendments to the United States Constitution.

131.    As a direct and proximate result of these Defendants' acts and omissions, Plaintiff ANDY GONZALEZ-SALTOS suffered injuries as alleged herein, including but not limited to injuries to their person, which injuries include pain, humiliation, anxiety, mental anguish, emotional distress, and other general and special damages in an amount to be ascertained according to proof at trial.

132.    As a direct and proximate result of each Defendant's acts and/or affirmative decisions not to act as set forth above, Plaintiff MARIA SALTOS sustained the following injuries and damages, past and future, including, but not limited to:

A.    Wrongful death of MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS;

B.    Loss of economic support, including lost wages and earning capacity, by MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS;

C.    Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support;

D.    Emotional distress from the violations of her personal Constitutional rights, including grief, sorrow, anxiety, worry, anger, humiliation, and indignity;

E.    Loss of enjoyment of life;

F.    All other legally cognizable special and general damages;

G.    Violations of state and federal constitutional rights; and

H.    All damages, punitive damages, and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, 29 U.S.C. § 793, California Civil Code §§ 52 and 52.1, Cal. Code of Civil

Procedure 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

133.    As a direct and proximate result of each Defendant's acts as set forth above, Plaintiff MARIA SALTOS, as Successor in Interest for Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS, sustained the following injuries and damages, past and future, including, but not limited to:

A. Hospital and medical expenses incurred by MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS;

B. Coroner's fees, funeral, and burial expenses;

C. MIA GONZALEZ-SALTOS' and HANNAH GONZALEZ-SALTOS' loss of life, pursuant to federal civil rights law;

D. MIA GONZALEZ-SALTOS' and HANNAH GONZALEZ-SALTOS' conscious pain/suffering, pursuant to federal civil rights law; and

E. All damages, punitive damages, and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, 29 U.S.C. § 793, California Civil Code §§ 52 and 52.1, Cal. Code of Civil Procedure 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

134.    In committing the acts alleged above, the Defendants and DOES 1-10 acted maliciously, oppressively, and/or with reckless disregard for the rights and safety of Plaintiff MARIA SALTOS, Plaintiff ANDY GONZALEZ-SALTOS, Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS, and others, and by reason thereof, Plaintiffs MARIA SALTOS and ANDY GONZALEZ-SALTOS are entitled to punitive damages and penalties allowable under 42 U.S.C. § 1983, California Code of Civil Procedure §§ 377.20 *et seq*., and other state and federal law against the individual Defendants. Plaintiffs do not seek punitive damages against the COUNTY OF TULARE.

135.    Plaintiffs are also entitled to reasonable costs and attorney's fees under 42 U.S.C. § 1988 and other applicable California codes and laws.

### THIRD CLAIM FOR RELIEF
#### *Monell*-Related Claims
(By Plaintiffs Against Defendant County of Tulare, Aspiranet, and DOEs 11-20)

136.   Plaintiffs incorporate the above allegations of fact and law, including those set out in paragraphs 1 – 80, as though fully set forth herein.

137.   Over the span of many years, different social workers, sheriff agents, and their respective supervisors engaged in substantially similar acts or omissions as alleged above in the common allegations all of which are incorporated herein by this reference as if set forth in full herein.

138.   The persistent pattern of violations of regulatory duties to supervise and monitor Plaintiffs' care by several different workers and their supervisors over an extended period of time demonstrates a pattern of deficiency in Defendants' program of training and supervision which was the ultimate cause of Plaintiffs' injuries as alleged herein.

139.   Defendants ASPIRANET and COUNTY OF TULARE, including through its child welfare agency and sheriff department, established and/or followed a constitutionally defective program of training and supervision that permitted the establishments of procedures, customs, practices as described in greater detail below which were the moving force behind the violation of Plaintiffs' constitutional rights to at least minimally adequate care, supervision, safety, and security by, but not limited to:

- The custom and/or practice of failing to learn basic safety information about minors taken into protective custody, and ask about or otherwise verify their ability to swim when placing them in a foster placement with a swimming pool;

- The custom and/or practice of failing to determine if minors taken into protective custody know how to swim or not, so to know whether a swimming pool at the foster placement would constitute an obvious drowning hazard to them if left unsupervised or with inadequate supervision;

- The custom and/or practice of failing to ensure that minors taken into protective custody have a means to communicate with their foster parents, especially when the minor(s) do not speak the same language as their caregivers;

- The custom and/or practice of failing to ensure that in certifying a foster placement with a swimming pool that the caregivers are physically capable of effecting rescue should a drowning event occur; and

- The custom and/or practice of failing to ensure that in certifying a foster placement with a swimming pool that the caregivers are adequately trained on their obligation to ensure continuous supervision of the minors while they are swimming.

- The custom and/or practice of of separating children from their parents without first obtaining a protective custody warrant in the absence of exigent circumstances;

- The policy, custom, or practice of continuing the detention of children from their parents after learning of the absence of exigent circumstances, and without obtaining parental consent or a court order; and

- The custom and/or practice of placing foster children in community care facilities and/or foster homes without first assessing the particular placement's capabilities to meet the particular child's known service needs, including the needs of minors with severe disabilities and/or special needs.

140. By acting with deliberate indifference in implementing a program of inadequate training and/or supervision and/or by failing to train and/or supervise its officers, agents and employees, in providing the constitutional protections guaranteed to individuals, including those under the Fourteenth Amendment to safety, security, supervision, and at least minimally adequate care, when performing actions related to the placement of foster children and the investigation and reporting of child neglect and abuse, and the provision of reasonably-adequate care.

141. Defendants breached their duties and obligations to Plaintiffs by, but not limited to, deliberately and indifferently failing to establish, implement and follow the correct and proper training and supervision program to ensure the rights of children coming into its care were respected and preserved. Defendants were deliberately indifferent to the deficiencies in its program of training and supervision to such an extent that its failure to implement a proper program was the moving force that caused the violation of Plaintiffs' rights by, among other things, failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with constitutional and statutory safeguards designed to protect children in the

Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS and Plaintiff ANDY GONZALEZ-SALTOS' situation; and, by deliberately permitting the individual Defendants, and each of them, to engage in the unlawful and unconstitutional conduct as alleged herein-above with a total indifference to the rights of affected foster children.

142.    On information and belief, Defendants knew, or reasonably should have known, that it was reasonably foreseeable that their policies, practices, customs, and usages would, and did, cause Plaintiffs to be injured and damaged. In spite of such knowledge, on further information and belief, Defendants were deliberately indifferent to the risk of such injury or harm to Plaintiffs. The aforementioned breaches and failures of Defendants occurred in contravention of public policy and their legal duties and obligations to Plaintiffs.

143.    The above actions and/or inactions, namely the customs, practices, and/or procedures of Defendants, were the moving force behind, and direct and proximate cause of Plaintiffs injuries, as alleged herein.

144.    As a direct and proximate result of these Defendants' acts and omissions, Plaintiff ANDY GONZALEZ-SALTOS suffered injuries as alleged herein, including but not limited to injuries to their person, which injuries include pain, humiliation, anxiety, mental anguish, emotional distress, and other general and special damages in an amount to be ascertained according to proof at trial.

145.    As a direct and proximate result of each Defendant's acts and/or affirmative decisions not to act as set forth above, Plaintiff MARIA SALTOS sustained the following injuries and damages, past and future, including, but not limited to:

    A.    Wrongful death of MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS;

    B.    Loss of economic support, including lost wages and earning capacity, by MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS;

C.  Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support;

D.  Emotional distress from the violations of her personal Constitutional rights, including grief, sorrow, anxiety, worry, anger, humiliation, and indignity;

E.  Loss of enjoyment of life;

F.  All other legally cognizable special and general damages;

G.  Violations of state and federal constitutional rights; and

H.  All damages, punitive damages, and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, 29 U.S.C. § 793, California Civil Code §§ 52 and 52.1, Cal. Code of Civil Procedure 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

146.    As a direct and proximate result of each Defendant's acts as set forth above, Plaintiff MARIA SALTOS, as Successor in Interest for Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS, sustained the following injuries and damages, past and future, including, but not limited to:

A.  Hospital and medical expenses incurred by MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS;

B.  Coroner's fees, funeral, and burial expenses;

C.  MIA GONZALEZ-SALTOS' and HANNAH GONZALEZ-SALTOS' loss of life, pursuant to federal civil rights law;

D.  MIA GONZALEZ-SALTOS' and HANNAH GONZALEZ-SALTOS' conscious pain/suffering, pursuant to federal civil rights law; and

E.  All damages, punitive damages, and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, 29 U.S.C. § 793, California Civil Code §§ 52 and 52.1, Cal. Code of Civil Procedure 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

147.    In committing the acts alleged above, the Defendants and DOES 1-10 acted maliciously, oppressively, and/or with reckless disregard for the rights and safety of Plaintiff MARIA

SALTOS, Plaintiff ANDY GONZALEZ-SALTOS, Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS, and others, and by reason thereof, Plaintiffs MARIA SALTOS and ANDY GONZALEZ-SALTOS are entitled to punitive damages and penalties allowable under 42 U.S.C. § 1983, California Code of Civil Procedure §§ 377.20 *et seq*., and other state and federal law against the individual Defendants. Plaintiffs do not seek punitive damages against the COUNTY OF TULARE.

148.    Plaintiffs are also entitled to reasonable costs and attorney's fees under 42 U.S.C. § 1988 and other applicable California codes and laws.

### FOURTH CLAIM FOR RELIEF
### Failure To Perform Mandatory Duty (Gov. Code § 815.6)
(By Plaintiffs against Defendants County of Tulare and DOEs 11-20, and each of them inclusive)

149.    Plaintiffs incorporate the above allegations of fact and law, including those set out in paragraphs 1 – 80, as though fully set forth herein.

150.    Plaintiff alleges this cause of action pursuant to California Government Code § 815.6 which states "where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

151.    Plaintiffs were harmed because employees of Defendant COUNTY OF TULARE, specifically CWS and the SHERIFF, and DOES 1-10 repeatedly violated their mandatory duties specified in the California Welfare and Institutions Code, Code of Regulations, Penal Code, Resource Family Approval Program Written Directives, SDM® Policy and Procedures Manual, the County of Tulare Child Welfare Services Handbook, All County Letters, and Division 31 Regulations.

152. From July 2-3, 2024, Defendant COUNTY OF TULARE failed to abide by their mandatory duties causing the tragic deaths of MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS.

153. CDSS has enacted Title 22, Division 6, Chapter 8.8 of the California Code of Regulations, entitled *General Licensing Requirements*, along with Chapter 9.5, entitled *Foster Family Homes* which set forth specific requirements regarding the safety and security of foster homes equipped with swimming pools.

154. Similarly, CDSS has enacted the *Resource Family Approval Written Directives* Version 8, effective November 1, 2022 and during the relevant time period. These directives were enacted under Title IV-E, Section 471(a)(10) of the Social Security Act and under Welfare and Institutions Code section 16519.5, and mirror the requirements regarding the safety and security of foster homes equipped with swimming pools set forth throughout Title 22, Division 6 of the California Code of Regulations.

155. Regulation section 89387(h) and Resource Family Approval Written Directives section 11-02(e) both provide the same clear mandate: an adult who has the ability to swim shall provide supervision at all times when a foster child is using a pool.

156. The reasoning behind these enactments is obvious—swimming pools are inherently dangerous to all children, and are especially dangerous to foster children where the caregiver may have limited understanding of the foster child's ability to swim. The required safeguard against this danger is ensuring that an adult with the ability to swim and effect rescue supervises the children at all times.

157. Here, Defendant COUNTY OF TULARE placed MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS in a home with a swimming pool when they did not know how

to swim and with caregivers who were physically incapable of supervising and effecting rescue, if needed.

158.    If Defendant COUNTY OF TULARE had discharged its mandatory duties, this tragedy could have been averted. As a result of this improper placement and failure to immediately remove MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS from a placement presenting a high risk of drowning and in violation of the mandatory duties by Defendant COUNTY OF TULARE, and their agents and employees, MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS drowned.

159.    As a direct result of the acts and omissions of Defendant COUNTY OF TULARE, by and through its agents and employees, Plaintiff MARIA SALTOS has suffered the loss of MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS's love, companionship, comfort, care, assistance, protection, affection, society, and moral support.

160.    As a direct result of the acts and omissions of Defendant COUNTY OF TULARE, by and through its agents and employees, Plaintiff MARIA SALTOS has suffered the following economic damages as a result of the death of her daughters according to proof:

    A.  The value of the financial support that MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS would have contributed to the Plaintiff MARIA SALTOS during her lifetime;

    B.  Funeral and burial expenses;

    C.  The loss of gifts or benefits that Plaintiff MARIA SALTOS could have expected to receive from MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS; and

    D.  Household services that MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS would have provided.

161.    As a direct result of the acts and omissions of Defendant COUNTY OF TULARE, by and through its agents and employees, MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS incurred general damages prior to his death, and was severely harmed, endured pain, suffering, disability, impairment, disfigurement, inconvenience, loss of enjoyment of life, scarring, and other non-economic damages.

162.    Plaintiff MARIA SALTOS is the personal representative or a successor in interest and authorized to bring a survival action on behalf of MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS' Estates pursuant to Code of Civil Procedure § 377.31, *et seq*.

163.    Plaintiff MARIA SALTOS, as the personal representative or a successor in interest to MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS, is entitled to recover MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS' pre-death economic and non-economic damages against Defendant COUNTY OF TULARE.

### FIFTH CLAIM FOR RELIEF
**Negligence/Negligence *Per Se* (Gov. Code § 820)**

(By Plaintiffs Against

All Defendants Except Defendants Alberto Gonzalez-Rios and Luke Hamilton)

164.    Plaintiffs incorporate the above allegations of fact and law, including those set out in paragraphs 1 – 80, as though fully set forth herein.

165.    Plaintiff alleges this cause of action, in part, pursuant to Government Code section 820. Government Code section 820, subsection (a) provides that "a public employee is liable for injury caused by his act or omission to the same extent as a private person."

166.    Plaintiffs do not assert direct liability against Defendant COUNTY OF TULARE in this cause of action. Plaintiff asserts only *respondeat superior* vicarious liability against Defendant COUNTY OF TULARE for the acts and/or omissions of its employees and agents.

167.    Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendants, inclusive, carelessly, negligently, grossly negligently, and recklessly failed to discharge their duty to exercise reasonable care and in a reasonable manner with respect Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS and Plaintiff ANDY GONZALEZ-SALTOS, putting Decedents at grave risk of harm and ultimately causing their deaths.

168.    Plaintiffs allege that had Defendants not breached their mandatory duties as herein alleged, they would have been required to act upon evidence of the inappropriateness of the placement of Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS and Plaintiff ANDY GONZALEZ-SALTOS in the subject foster placement.

169.    Defendants would have been obligated to take measures to protect Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS and Plaintiff ANDY GONZALEZ-SALTOS or to remove them from the foster home where they was a high risk harm or death due to drowning=. Therefore, as a proximate result of Defendants' failures to fulfill their mandatory duties, Decedents MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS drowned in the presence of Plaintiff ANDY GONZALEZ-SALTOS.

170.    Plaintiff further alleges that Defendants have breached other statutory and common law duties by additional specific acts or omissions of which Plaintiff is presently unaware and will seek leave of the Court to amend this Complaint when Plaintiff discovers such acts or omissions or at time of trial.

171.    As a direct and proximate result of these Defendants' acts and omissions, Plaintiff ANDY GONZALEZ-SALTOS suffered injuries as alleged herein, including but not limited to injuries to their person, which injuries include pain, humiliation, anxiety, mental anguish, emotional distress, and other general and special damages in an amount to be ascertained according to proof at trial.

172.    As a direct result of the acts and omissions of Defendants, Plaintiff MARIA SALTOS has suffered the loss of MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS' love, companionship, comfort, care, assistance, protection, affection, society, and moral support.

173.    As a direct result of the acts and omissions of Defendants, Plaintiff MARIA SALTOS has suffered the following economic damages as a result of the death of her daughters according to proof:

    A.  The value of the financial support that MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS would have contributed to the Plaintiff MARIA SALTOS during her lifetime;

    B.  Funeral and burial expenses;

    C.  The loss of gifts or benefits that Plaintiff MARIA SALTOS could have expected to receive from MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS; and

    D.  Household services that MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS would have provided.

174.    As a direct result of the acts and omissions of Defendant COUNTY OF TULARE, by and through its agents and employees, MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS incurred general damages prior to his death, and was severely harmed, endured pain, suffering, disability, impairment, disfigurement, inconvenience, loss of enjoyment of life, scarring, and other non-economic damages.

175.    Plaintiff MARIA SALTOS is the personal representative or a successor in interest and authorized to bring a survival action on behalf of MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS' Estates pursuant to Code of Civil Procedure § 377.31, *et seq*.

176.    Plaintiff MARIA SALTOS, as the personal representative or a successor in interest to MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS, is entitled to recover MIA GONZALEZ-SALTOS and HANNAH GONZALEZ-SALTOS' pre-death economic and non-economic damages against Defendant COUNTY OF TULARE.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for a judgment in favor of Plaintiffs and against Defendants as follows:

1. For judgment in favor of Plaintiffs on all counts;

2. For compensatory damages according to proof;

3. For pre-judgment and post-judgment interest at the maximum legal rate;

4. Attorneys' fees pursuant to 42 U.S.C. §1988, and any other appropriate statute;

5. Costs of suit incurred herein; and

6. For such further relief as this Court may deem just, proper, and appropriate.

DATED this 6th day of May 2025.

PANISH | SHEA | RAVIPUDI LLP

By _____
WYATT VESPERMANN (#322865)
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone: 310.477.1700
Attorneys for Plaintiffs

1

## DEMAND FOR JURY TRIAL

2

PLEASE TAKE NOTICE that Plaintiffs, by and through their undersigned attorneys,

3

hereby demand a jury trial of all issues in the above-referenced matter.

4

DATED this 28th day of July 2025.

5

6                                    PANISH | SHEA | RAVIPUDI LLP

7

8                                    By _____
                                     WYATT VESPERMANN (#322865)
9                                    11111 Santa Monica Boulevard, Suite 700
                                     Los Angeles, California 90025
10                                   Telephone: 310.477.1700
                                     Attorneys for Plaintiffs
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28